**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALBERT RENN, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>OTAY LAKES BREWERY, LLC,<br><br>Defendant. | Case No: **'23 CV 1139 GPC BLM**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 *et seq*.; CAL. BUS. & PROF. CODE §§17500 *et seq*.; and CAL. CIV. CODE §§ 1750 *et seq*.; BREACH OF EXPRESS & IMPLIED WARRANTIES; NEGLIGENT AND INTENTIONAL MISREPRESENTATION; AND UNJUST ENRICHMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Albert Renn, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, brings this action against Otay Lakes Brewery, LLC ("OLB"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## **INTRODUCTION**

1.      OLB sells a line of "Nova" alcoholic kombucha ("Nova Kombucha" or the "Products")[1] that it labels as being "good for you" and promoting "health, balance and goodness."



2.      OLB labels Nova Kombucha with such claims because consumers are attracted to products they perceive as healthy or "better for you" than other alternatives in a food and beverage category.

---

[1] During the relevant time period, the Products were sold in at least fifteen flavors, in single cans and/or multipacks: Sexy Piña Colada, Mint Watermelon, Cactus Fruit Agave Jalapeño, Peachy Lychee, Strawberry Coconut, Peach Passion Fruit, Sexy Mojito, Mango Ginger, Hibiscus Lavender, Acai Berry Guarana, Mango Chili, Orange Brunch, Tangerine-Turmeric-Cayenne Pepper-Ginger, Amarena Cherry, and La Ola Dragon Fruit. To the extent any additional flavors were sold during the Class Period, the complaint, should be read to include rather than exclude such flavors.

1

3.     OLB's representations, however, are false and misleading because the Products are 6-8% alcohol by volume, and consuming alcohol causes a wide variety of health risks and problems, both in the short and long term.

4.     Plaintiff brings this action on behalf of himself, similarly-situated Class Members, and the general public, to enjoin OLB from deceptively marketing the Products in this manner and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

5.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from OLB. In addition, more than two-thirds of the members of the class reside in states other than the state in which OLB is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

6.     The Court has personal jurisdiction over OLB because it has purposely availed itself of the benefits and privileges of conducting business activities within California, including by distributing and selling the Nova Kombucha in California.

7.     Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

8.     Plaintiff Albert Renn presently resides and intends to continue to reside in San Diego County, California. Accordingly, he is a citizen of the State of California.

9.     Defendant Otay Lakes Brewery, LLC, is incorporated in and has its principal place of business in California. Accordingly, it is a citizen of the state of California.

1

## **FACTS**

2

### I.    OLB MARKETS THE NOVA KOMBUCHA AS HEALTHY

3

10.    During the four years preceding the filing of this Complaint and continuing

4

today, OLB has sold the Products.

5

11.    As OLB knows, consumers prefer, are willing to pay more for, and purchase

6

more often, products marketed and labeled as being healthy or better for you.[2]

7

12.    Accordingly, OLB's marketing of the Products leverages consumers' preference

8

for healthy beverages by labeling them with statements intended to convince consumers that

9

the Products are healthy, or at least healthier than they really are. These include:

10

a)    "Some things in life are good for you, other things in life are fun. They

11

don't meet each other very often, but when they do, life gets pretty brilliant, pretty

12

quickly."

13

b)    "Nova Easy Kombucha is one of those rare things where health, balance

14

and goodness get a lot more interesting."

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] *See*, *e.g.*, Nancy Gagliardi, "Consumers Want Healthy Foods—And Will Pay More For Them," *Forbes* (Feb. 18, 2015) ("88% of those polled are willing to pay more for healthier foods").

3

13.    An exemplar of the Products' labeling, including the challenged language, appear below.



SOME THINGS IN LIFE ARE GOOD FOR YOU, OTHER THINGS IN LIFE ARE FUN. THEY DON'T MEET EACH OTHER VERY OFTEN, BUT WHEN THEY DO, LIFE GETS PRETTY BRILLIANT, PRETTY QUICKLY. NOVA EASY KOMBUCHA IS ONE OF THOSE RARE THINGS WHERE HEALTH, BALANCE AND GOODNESS GET A LOT MORE INTERESTING.




14.     Through these claims, OLB conveys to consumers that the Products "good for you," "health[y]" and "balance[d]."

15.     But as described below, this health and wellness message is false and misleading because Nova Kombucha contains six to eight percent alcohol by volume and alcohol consumption even at low levels harms health and increases risk of disease.

## II.     CONSUMING ALCOHOL IS DETRIMENTAL TO HEALTH

### A.     Consuming Alcohol Causes Cancer and Numerous Other Chronic Diseases

16.     "Globally, alcohol is the seventh leading cause of death and disability-associated life years (DALYs) lost, and it caused 2.8 million deaths in 2016. In that year, among adults less than 50 years old, alcohol was the leading cause of death and DALYs lost." Further, "[a]lcohol is causally implicated *in over 200 conditions*, including cancers of the digestive tract and liver."[3]

17.     For example, alcohol is a human carcinogen. Its consumption has been shown to cause cancer of the mouth, pharynx, larynx, and esophagus.[4] Cohort and case-control epidemiological studies in a variety of human populations are consistent in reporting moderate to strong associations between alcohol consumption and cancer at these four sites, and the risk of cancer increases with increasing consumption level.[5]

---

[3] Pohl, K., et al., *Alcohol's Impact on the Gut and Liver*, NUTRIENTS, 13(9), 3170 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8472839/ (emphasis added) ["Pohl et al., *Alcohol's Impact*"].

[4] Department of Health and Human Services—National Toxicology Program, *Alcoholic Beverage Consumption*, REPORT ON CARCINOGENS, FIFTEENTH EDITION (2021), *available at* https://ntp.niehs.nih.gov/ntp/roc/content/profiles/alcoholicbeverageconsumption.pdf.    *See also* Connor, J., *Alcohol consumption as a cause of cancer*, ADDICTION vol. 112,2 (2017): 222-28, https://pubmed.ncbi.nlm.nih.gov/27442501/ ("[E]pidemiological evidence can support the judgement that alcohol causes cancer of the oropharynx, larynx, oesophagus, liver, colon, rectum and breast. . . . There is strong evidence that alcohol causes cancer at seven sites in the body and probably others.").

[5] *Id.*

18.     In addition, alcohol consumption damages nearly every major organ in the body, as summarized in the graphic below.[6]



---

[6] National Institute on Alcohol Abuse and Alcoholism, *Alcohol's Effects on the Body*, NIAAA.NIH.GOV (last visited May 22, 2023), https://www.niaaa.nih.gov/alcohols-effects-health/alcohols-effects-body.

19.    One of the most harmful effects of consuming alcohol is damage to the liver. According to the American Liver Foundation (ALF), "Excessive alcohol consumption contributes to 3 types of liver disease: fatty liver, where excess fat builds up in the liver; alcoholic hepatitis, in which the liver cells become inflamed; and alcohol-related cirrhosis, in which normal liver tissue is replaced by non-living scar tissue."[7]

20.    In addition, while the alcohol industry has long perpetuated the myth that low levels of alcohol consumption is actually good for the heart, "[c]ontrary to popular opinion, alcohol is not good for the heart."[8] "No randomized controlled trials (RCTs) have confirmed health benefits of alcohol."[9] Further, "[a]lcohol increases the risk for hypertensive heart disease, cardiomyopathy, atrial fibrillation, flutter and strokes. Alcohol consumption (100gm/ week) is linearly associated with a higher risk of stroke, heart failure, fatal hypertensive disease and fatal aortic aneurysm, and has a borderline elevation in the risk of coronary heart disease, as compared to those consuming between 0-25g/ week."[10]

21.    As a final example, alcohol consumption "has been shown to alter this axis through the disruption of gut microbial composition, the metabolome and the gut epithelial barrier."[11] "Alcohol-induced dysbiosis contributes to the development of both acute (e.g.,

---

[7] ALF, *Alcohol-Related Liver Disease*, LIVERFOUNDATION.ORG (last updated Mar. 17, 2023), https://liverfoundation.org/liver-diseases/alcohol-related-liver-disease/.

[8] World Heart Federation, The Impact of Alcohol Consumption on Cardiovascular Health: Myths and Measures, at 8 (Jan. 2022), https://world-heart-federation.org/news/no-amount-of-alcohol-is-good-for-the-heart-says-world-heart-federation/.

[9] *Id.*

[10] *Id.* (citing Wood AM, et al., *Risk thresholds for alcohol consumption: combined analysis of individual-participant data for 599 912 current drinkers in 83 prospective studies*. Vol. 391 LANCET. (2018))

[11] Pohl et al., *Alcohol's Impact*, *supra* n.3.

alcoholic hepatitis) and chronic (e.g., alcohol-related cirrhosis) liver diseases through its pathological effect on gut integrity."[12]

**B. Authoritative Bodies Recommend Excluding or Minimizing Alcohol Consumption for Good Health**

22.   The 2020-2025 Dietary Guidelines for Americans ("2020 DGAs") states "[a]lcohol has been found to increase risk for cancer, and for some types of cancer, the risk increases even at low levels of alcohol consumption (less than 1 drink in a day)."[13]

23.   Further, "[e]merging evidence suggests that even drinking within the recommended limits may increase the overall risk of death from various causes, such as from several types of cancer and some forms of cardiovascular disease."[14]

24.   The Centers for Disease Control and Prevention (CDC) reiterates the 2020 DGAs, and adds:

> Although past studies have indicated that moderate alcohol consumption has protective health benefits (e.g., reducing risk of heart disease), recent studies show this may not be true. While some studies have found improved health outcomes among moderate drinkers, it's impossible to conclude whether these improved outcomes are due to moderate alcohol consumption or other differences in behaviors or genetics between people who drink moderately and people who don't.[15]

---

[12] *Id.*

[13] U.S. Dep't of Health & Human Servs. and U.S. Dept. of Agric., "Dietary Guidelines for Americans 2020 –2025," at 49 (8th ed.), *available at* https://www.dietaryguidelines.gov/sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf.

[14] *Id.*

[15] Centers for Disease Control and Prevention, *Dietary Guidelines for Alcohol*, CDC.GOV (last reviewed April 19, 2022), *available at* https://www.cdc.gov/alcohol/fact-sheets/moderate-drinking.htm (internal citations omitted).

25.     The CDC also aptly states: "The less alcohol you drink, the lower your risk for cancer. . . . The more you drink, the higher your cancer risk."[16]

26.     In a January 2023 press release for a recently published article in *The Lancet*, WHO explained "there are no studies that would demonstrate that the potential beneficial effects of light and moderate drinking on cardiovascular diseases and type 2 diabetes outweigh the cancer risk associated with these same levels of alcohol consumption for individual consumers."[17] "As such, no safe amount of alcohol consumption for cancers and health can be established."[18]

27.     "It doesn't matter how much you drink – the risk to the drinker's health starts from the first drop of any alcoholic beverage. The only thing that we can say for sure is that the more you drink, the more harmful it is – or, in other words, the less you drink, the safer it is," according to Dr. Carina Ferreira-Borges, the Noncommunicable Disease Management and Regional Advisor for Alcohol and Illicit Drugs in the WHO Regional Office for Europe.[19]

28.     In short, there is no safe level of alcohol consumption, and any increase in consumption increases risk of disease.

---

[16] CDC, *Alcohol and Cancer*, CDC.GOV (last reviewed Mar. 13, 2023), *available at* https://www.cdc.gov/cancer/alcohol/index.htm.

[17] WHO Europe, *No level of alcohol consumption is safe for our health*, WHO.INT (Jan. 4, 2023), https://www.who.int/europe/news/item/04-01-2023-no-level-of-alcohol-consumption-is-safe-for-our-health.

[18] Anderson et al., *Health and cancer risks associated with low levels of alcohol consumption*, THE LANCET, Vol. 8 (Jan. 2023), *available at* https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(22)00317-6/fulltext.

[19] WHO Europe, *No level of alcohol consumption is safe for our health*, WHO.INT (Jan. 4, 2023), https://www.who.int/europe/news/item/04-01-2023-no-level-of-alcohol-consumption-is-safe-for-our-health.

## IV.  NOVA KOMBUCHA'S LABELING VIOLATES STATE AND FEDERAL REGULATIONS

29.     While the labeling of most alcohols is regulated by the Alcohol and Tobacco Tax and Trade Bureau (TTB), "certain beers do not meet the definition of a 'malt beverage' under the Federal Alcohol Administration Act (FAA Act)" and "are subject to the food labeling provisions of the Federal Food, Drug, and Cosmetic Act (FD&C Act), 21 U.S.C. 341-350; the Fair Packaging and Labeling Act (FPLA), 15 U.S.C. 1451-1461; and FDA's implementing regulations."[20]

30.     The Nova Kombucha and their challenged labeling statements violate California Health and Safety Code §§109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See, e.g., id.* § 110100; *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto.").

31.     First, the challenged claims are false and misleading for the reasons described herein, in violation of 21 U.S.C. § 343(a), which deems misbranded any food or beverage whose "label is false or misleading in any particular." Defendant accordingly also violated California's parallel provision of the Sherman Law. *See* Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

32.     Second, despite making the challenged claims, Defendant "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming Nova

---

[20] U.S. FDA, "Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration," at 3 (Apr. 2023), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-certain-beers-subject-labeling-jurisdiction-food-and-drug-administration.

Kombucha at typical levels, including increased risk of multiple forms of cancer, liver disease, and cardiovascular disease, and harms bone and gut health.

33. Third, Defendant failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Defendant failed to disclose the increased risk of cancer and serious chronic disease and death that is likely to result from the usual consumption of the Products, including in the customary and prescribed manners, such as regular consumption of a single serving per day.

## V.   PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

34. As best as he can recall, Plaintiff Albert Renn purchased Nova Kombucha, approximately once per month, beginning in or around 2022. He recalls purchasing an assortment of various flavors of the Nova Kombucha and typically purchased it from local stores such as the Vons located at 3610 Adams Ave., San Diego, California and the Ralphs located at 1020 University Ave., San Diego, California.

35. When purchasing Nova Kombucha, Mr. Renn was seeking a beverage that was healthy, that is, the type of beverage whose regular consumption would not likely increase the risk of disease. In purchasing Nova Kombucha, Mr. Renn was exposed to, read, and relied on OLB's health and wellness representations, including those described in paragraph 12.

36. These representations, however, were and are deceptive because the Nova Kombucha is not healthy and its consumption increases risk of disease including cancer and extensive organ damage.

37. Mr. Renn is a lay consumer, like other average consumers, who did not have the specialized knowledge that OLB had regarding the composition of the Nova Kombucha or the effects of consuming the Products. At the time of purchase, Mr. Renn was unaware of the extent to which consuming the Nova Kombucha adversely affects health or what amount of Nova Kombucha might have such an effect.

38.     Mr. Renn acted reasonably in relying on the challenged labeling claims, which OLB intentionally placed on the Nova Kombucha labeling with the intent to induce average consumers into purchasing the Nova Kombucha.

39.     Mr. Renn would not have purchased, or would not have been willing to pay as much for, the Nova Kombucha if he knew that the challenged labeling claims were false and misleading in that the Nova Kombucha is not as healthy as conveyed and in fact is detrimental to health.

40.     The Products cost more than similar products without misleading labeling and would have cost less absent OLB's false and misleading statements.

41.     Through the misleading labeling claims, OLB was able to gain a greater share of the market than it would have otherwise and was able to increase the size of the market.

42.     Mr. Renn paid more for the Nova Kombucha, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling complained of herein.

43.     Mr. Renn would not have purchased the Nova Kombucha if he had known it was misbranded pursuant to California and FDA regulations, or that the challenged claims were false or misleading.

44.     For these reasons, the Products were worth less than what Mr. Renn and the Class paid for them.

45.     Instead of receiving products that are healthful, the Products Mr. Renn and the Class received were likely to lead to increased risk of disease.

46.     Mr. Renn still wishes to purchase healthy beverages and continues to see the Products at stores when he shops. He would purchase the Products in the future if the challenged claims were true, but unless OLB is enjoined in the manner Mr. Renn seeks, he may not be able to rely on OLB's health and wellness claims in the future.

47.     Mr. Renn's substantive right to a marketplace free of fraud, where he is entitled to rely with confidence on representations such as those made by OLB, continues to be violated every time Mr. Renn is exposed to the misleading labeling claims.

48.     Mr. Renn's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

49.     While reserving the right to redefine or amend the class definition prior to seeking class certification, Plaintiff seeks to represent a class of all persons the in United States, and separately a Subclass of all persons in California, who, at any time from four years from the filing of the complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, any of the Nova Kombucha products (the "Class" and "California Subclass").

50.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

51.     Questions of law and fact common to Plaintiff and the Class include:

a.     whether OLB communicated a message regarding the healthfulness of the Products through their packaging and advertising;

b.     whether that message was material, or likely to be material, to a reasonable consumer;

c.     whether the challenged claims are false, misleading, or reasonably likely to deceive a reasonable consumer;

d.     whether OLB's conduct is unfair or violates public policy;

e.     whether OLB's conduct violates state or federal food and beverage labeling statutes or regulations;

f.     whether OLB made and breached warranties;

g.     the proper amount of damages, including punitive damages;

h.     the proper amount of restitution;

i.     the proper scope of injunctive relief; and

j.     the proper amount of attorneys' fees.

52.     These common questions of law and fact predominate over questions that affect only individual Class Members.

13

53.    Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to OLB's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented. Absent OLB's business practice of deceptively and unlawfully labeling the Products, Plaintiff and other Class Members would not have purchased them or would have paid less for them.

54.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation involving the false and misleading advertising of foods and beverages.

55.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

56.    OLB has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

57.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

58.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

59.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

60.    The acts, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

### Fraudulent

61.     A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

62.     As set forth herein, the challenged labeling claims relating to the Products are likely to deceive reasonable consumers and the public as to the healthfulness of the Products.

### Unlawful

63.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- •       The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- •       The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- •       The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- •       The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

### Unfair

64.     OLB's conduct with respect to the labeling, advertising, and sale of the Products was unfair because OLB's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

65.     OLB's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

66.     OLB's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by OLB through the misleading labeling does not outweigh the harm to Class Members who were deceived into

15

purchasing the Products, believing they were healthy, when in fact they are likely to detriment health.

67.     OLB profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

68.     Plaintiff and Class Members are likely to continue to be damaged by OLB's deceptive trade practices because OLB continues to disseminate misleading information. Thus, injunctive relief enjoining OLB's deceptive practices is proper.

69.     OLB's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of OLB's unlawful conduct.

70.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining OLB from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

71.     Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

72.     Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than his claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of OLB's challenged behavior.

### SECOND CAUSE OF ACTION

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***

73.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

74.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

76.     As alleged herein, the advertisements, labeling, policies, acts, and practices of OLB relating to the Products were likely to mislead consumers acting reasonably, as to the healthfulness of the Products.

77.     Plaintiff suffered injury in fact as a result of OLB's actions as set forth herein because Plaintiff purchased the Products in reliance on OLB's false and misleading marketing claims stating or suggesting that the Products are healthful.

78.     OLB's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because OLB has advertised the Products in a manner that is untrue and misleading, which OLB knew or reasonably should have known, and omitted material information from the Products' labeling.

79.     OLB profited from the sale of the falsely and deceptively advertised the Products to unwary consumers.

80.     As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of all monies from the sale of the Products by which OLB was unjustly enriched.

81.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining OLB from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

82.     Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty claims), and restitution is not limited to returning to Plaintiff and class members monies in which they have an interest, but more broadly serves to deter the offender and others from

future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

## THIRD CAUSE OF ACTION

### Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

83. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

84. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

85. OLB's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

86. OLB profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

87. OLB's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

88. Pursuant to California Civil Code § 1782, more than 30 days before filing this lawsuit, Plaintiff sent to OLB by certified mail, return receipt requested, written notice of his

claims and OLB's particular violations of the Act, but OLB has failed to implement remedial measures.

89.    Plaintiff and the Class have suffered harm, and therefore seek actual damages resulting from purchases of the Products sold throughout the Class Period to all Class Members, punitive damages, injunctive relief in the form of modified advertising and a corrective advertising plan, restitution, and attorneys' fees and costs. *See* Cal. Civ. Code § 1782(d).

90.    In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

## FOURTH CAUSE OF ACTION

### Breaches of Express Warranties, Cal. Com. Code § 2313(1)

91.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

92.    Through the Products' labeling, OLB made affirmations of fact or promises, or description of goods, that, *inter alia*, the Products are beneficial to health. These affirmations and descriptions include those listed in paragraph 12.

93.    These representations were part of the basis of the bargain in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

94.    OLB breached its express warranties by selling Products that, for the reasons described herein, are not healthy but rather harm health.

95.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Products.

96.    As a result, Plaintiff seeks on behalf of himself and other Class Members, actual damages arising as a result of OLB's breaches of express warranties, including, without limitation, expectation damages.

### FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314

97.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

98.   OLB, through its acts set forth herein, in the sale, marketing, and promotion of the Products, made representations, listed in paragraph 12, stating the Products are healthy.

99.   OLB is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

100.   OLB breached that implied warranty because, for the reasons discussed herein, the Products were and are not healthy.

101.   As an actual and proximate result of OLB's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by OLB to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

102.    As a result, Plaintiff seeks on behalf of himself and other Class Members, actual damages arising as a result of OLB's breaches of implied warranties, including, without limitation, expectation damages.

### SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

103.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

104.   As alleged above, Defendant misrepresented the healthfulness of its Products because their alcoholic content renders them unhealthy. These misrepresentations constituted a material fact in that a consumer's decision to purchase the Products would be influenced by the healthfulness of the Products.

105.   Defendant's misrepresentations were made in the course of business transactions (the marketing, advertisement, sale, and purchase of the Products) in which both Plaintiff and Defendant have a pecuniary interest.

106.   Defendant knew or should have known that these representations were false or misleading and it failed to exercise reasonable care in dissemination of its labels and in its marketing and advertising.

107.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to bodily health, and reasonable consumers would attach importance to such representations which would influence their purchasing decision.

108.   In selling the Products, Defendant acted in the ordinary course of its business and had a pecuniary interest in Plaintiff and Class Members purchasing the Products.

109.    Defendant owed a duty of care to Plaintiff and the Class, not to provide false or incomplete information when they were making their purchase decisions regarding the Products.

110.   Plaintiff and Class Members have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products; had the correct facts been known, they would not have purchased the Products, or at least not at the prices at which the Products were offered.

111.   Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and Class Members have suffered actual damages and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation

112.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

113.   Defendant marketed the Products in a manner conveying to reasonable consumers that the Products are healthy. Therefore, Defendant has made misrepresentations about the healthfulness of the Products.

114.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to bodily health. A reasonable consumer would

21

attach importance to such representations and would be induced to act thereon in making purchasing decisions.

115.   At all relevant times, Defendant knew that the misrepresentations were misleading, or has acted recklessly in making the misrepresentations, without regard to their truth.

116.   Defendant intended that Plaintiff and other consumers rely on these misrepresentations on the Products' packaging.

117.   Plaintiff and the Class have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products; had the correct facts been known, they would not have purchased the Products, or at least not at the prices at which the Products were offered.

118.   Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and Class Members have suffered actual damages and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

119.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

120.   Plaintiff and Class Members conferred upon Defendant an economic benefit, in the form of profits resulting from the purchase and sale of the Products.

121.   Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

122.   It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

*Renn v. Otay Lakes Brewery, LLC*
CLASS ACTION COMPLAINT

123.  As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## **PRAYER FOR RELIEF**

124.  Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against OLB as to each and every cause of action, and the following remedies:

125.  An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

      a.      An Order requiring OLB to bear the cost of Class Notice;

      b.      An Order compelling OLB to conduct a corrective advertising campaign;

      c.      An Order compelling OLB to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

      d.      An Order requiring OLB to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

      e.      An Order requiring OLB to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

      f.      An Order requiring OLB to pay compensatory damages and punitive damages as permitted by law;

      g.      An award of attorneys' fees and costs; and

      h.      Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

126.  Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 20, 2023          /s/ Paul K. Joseph

                               **FITZGERALD JOSEPH LLP**

23

1                 JACK FITZGERALD
2                 *jack@fitzgeraldjoseph.com*
                  PAUL K. JOSEPH
3                 *paul@fitzgeraldjoseph.com*
4                 MELANIE PERSINGER
                  *melanie@fitzgeraldjoseph.com*
5                 TREVOR M. FLYNN
6                 *trevor@fitzgeraldjoseph.com*
                  CAROLINE S. EMHARDT
7                 *caroline@fitzgeraldjoseph.com*
8                 2341 Jefferson Street, Suite 200
                  San Diego, California 92110
9                 Phone: (619) 215-1741
10                ***Counsel for Plaintiff***

*Renn v. Otay Lakes Brewery, LLC*
CLASS ACTION COMPLAINT