UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT RENN, on behalf of himself, all others similarly situated, and the general public,<br><br>                                    Plaintiff,<br>v.<br>OTAY LAKES BREWERY, LLC,<br>                                    Defendant. | Case No.: 23CV1139-GPC(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 13.]** |

Before the Court is Defendant's motion to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 13.) Plaintiff filed an opposition on November 9, 2023.  (Dkt. No. 15.)  Defendant filed a reply on August 25, 2023.  (Dkt. No. 10.)  A hearing was held on January 26, 2024. (Dkt. No. 19.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.

## Background

On June 20, 2023, Plaintiff Albert Renn ("Plaintiff") filed a purported class action complaint against Defendant Otay Lakes Brewery, LLC ("Defendant") alleging deceptive and fraudulent marketing of its alcoholic "Nova Kombucha" (the "Product") as "good for you" and promoting "health, balance and goodness."  (Dkt. No. 1, Compl. ¶¶ 1, 4.)  On

1

September 14, 2023, the Court *sua sponte* dismissed the complaint for lack of subject matter jurisdiction with leave to amend and denied Defendant's motion to dismiss as moot. (Dkt. No. 11.) On September 28, 2023, Plaintiff filed a first amended complaint ("FAC"). (Dkt. No. 12.) In the FAC, Plaintiff claims that Defendant's labeling of Nova Kombucha as "good for you" and promoting "health, balance and goodness" are false and misleading because it contains 6-8% alcohol by volume and consuming alcohol causes a wide variety of short and long term health risks and problems. (*Id.* ¶¶ 1, 3.) Moreover, Plaintiff claims it is misleading to suggest that the Products are healthier than any other alcoholic beverages or hard kombuchas. (*Id.*)

Traditional kombucha is a fermented tea that has gained a reputation as being healthy because it has been promoted as having a broad range of health benefits such as "supporting gut health, boosting immunity and energy, reducing cravings and inflammation and promoting general overall health." (*Id.* ¶¶ 10, 11.) Traditional kombucha has a small amount of alcohol (0.5% or less) from fermentation but hard kombucha has 10-15 times higher alcohol percentage ranging around 4-8% alcohol by volume. (*Id.* ¶ 12.) Due to kombucha's health benefits that has gained popularity, alcohol manufacturers, such as Plaintiff, have added alcohol to kombucha, and the market for hard kombucha has recently grown dramatically. (*Id.* ¶ 13.) In 2020, hard kombucha sales grew 2,134 percent over the previous year. (*Id.*) Defendant markets Nova Kombucha by leveraging consumers' preferences for healthy beverages. (*Id.* ¶ 16.)

Defendant advertises the Products on billboards around San Diego with the phrase "Your Happy Healthy Hour". (*Id.* ¶ 17.) The billboard artwork is also displayed on the LinkedIn page of Tiago Carneiro, a founder of OLB. (*Id.* ¶ 18.) Through its labeling, Defendant promotes the Products as healthy, or at least healthier than it really is, and healthier than competing products. (*Id.* ¶ 19.) Specifically, the Products' labels state, "Nova Easy Kombucha is one of those rare things where health, balance and goodness get a lot more interesting." (*Id.* ¶ 20.) Also, most flavors of the Products state, "Some

things in life are good for you, other things in life are fun. They don't meet each other very often, but when they do, life gets pretty brilliant, pretty quickly." (*Id.* ¶ 21.)

Plaintiff complains that these health and wellness messages convey that Nova Kombucha, despite containing alcohol, are nevertheless "good for you," "health[y]" and "balance[d]" as well as healthier than similar alcoholic beverages. (*Id.* ¶ 23.) These statements are false and misleading because Nova Kombucha contains six to eight percent alcohol by volume and any alcohol consumption harms health by causing cancer and other chronic diseases. (*Id.* ¶¶ 24-37.)

Plaintiff started purchasing various flavors of Nova Kombucha once a month starting around 2022 from local stores such as Vons and Ralphs. (*Id.* ¶ 45.) He recalls purchasing Nova Kombucha in Cactus Fruit, Agave, Jalapeno; Mint, Watermelon; Peach, Passion Fruit; and Strawberry Coconut. (*Id.*) When he purchased the Products, Plaintiff was looking for a kombucha drink that was healthy. (*Id.* ¶ 46.) As a lay consumer, he did not have specialized knowledge on the processing and formulation of the Products or the health effects of consuming the Products. (*Id.* ¶ 49.) Plaintiff believed the Products were healthy and was not aware of the degree or extent to which they adversely affected his health or what amount might have such an effect. (*Id.*) He reasonably relied on the labeling claims which were intentionally placed in order to induce consumers into purchasing the Products. (*Id.* ¶ 50.) Plaintiff claims he would not have purchased or would not have been willing to pay as much for the Products if he knew the labeling claims were false and misleading. (*Id.* ¶ 51.) The Products cost more than similar products without misleading labels and would have cost less absent the false and misleading statements. (*Id.* ¶ 52.)

Plaintiff sees the Products at stores where he shops and would purchase the Products if they were reformulated so that the voluntary health and wellness labeling statements were true. (*Id.* ¶ 58.) He would purchase the Products in the future, but without an injunction he may not be able to tell whether the Products are reformulated in such a way that makes the representations true. (*Id.* ¶ 59.)

3

Plaintiff alleges causes of action under 1) California's Unfair Competition Law, ("UCL"), California Business & Professions Code sections 17200 *et seq.*; 2) California's False Advertising Law, ("FAL"), California Business & Professions Code sections 17500 *et seq.*; 3) California's Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq.*; 4) California Commercial Code section 2313(1) for breach of express warranties; 5) California Commercial Code section 2314 for breach of the implied warranty of merchantability; 6) negligent representation; 7) intentional misrepresentation; and 8) unjust enrichment. (*Id.* ¶¶ 71-136.)

## Discussion

### A. Legal Standard on Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits challenges to a court's subject matter jurisdiction and includes a challenge for lack of Article III standing. *See Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation mark omitted).

### B. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police*

1  *Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required
2  only to set forth a "short and plain statement of the claim showing that the pleader is
3  entitled to relief," and "give the defendant fair notice of what the . . . claim is and the
4  grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

5    A complaint may survive a motion to dismiss only if, taking all well pleaded
6  factual allegations as true, it contains enough facts to "state a claim to relief that is
7  plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,
8  550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
9  content that allows the court to draw the reasonable inference that the defendant is liable
10 for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of
11 action, supported by mere conclusory statements, do not suffice."  *Id.*  "In sum, for a
12 complaint to survive a motion to dismiss, the non-conclusory factual content, and
13 reasonable inferences from that content, must be plausibly suggestive of a claim entitling
14 the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)
15 (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all
16 facts alleged in the complaint, and draws all reasonable inferences in favor of the
17 plaintiff.  *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

18   Where a motion to dismiss is granted, "leave to amend should be granted 'unless
19 the court determines that the allegation of other facts consistent with the challenged
20 pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.,*
21 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*
22 *Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would
23 be futile, the Court may deny leave to amend.  *See DeSoto,* 957 F.2d at 658; *Schreiber,*
24 806 F.2d at 1401.

25 / / /
26 / / /
27 / / /
28 / / /

C.   **CLRA, FAL, and UCL**

Defendant raises two challenges to the CLRA, FAL, and UCL claims.[1]

### 1.   Puffery

First, Defendant argues that the challenged health statements are non-actionable puffery as they are nonspecific assertions about "things" "get[ting] a lot more interesting" and "life get[ting] pretty brilliant, pretty quickly" that cannot be proven true or false. (Dkt. No. 13-1 at 8-9.[2])  Plaintiff responds that while some statements on the labels are puffery, such as "fun", other specific health and wellness claims, such as "health, balance" and "good for you" are not puffery because consumers rely on health-related messages.  (Dkt. No. 15 at 8-9.)

California law provides that false advertising claims will not lie where the challenged statements constitute "puffery." *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008) (discussing puffery under UCL, FAL, and CLRA).  "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (addressing puffery under Lanham Act) (quoting *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)). "Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Id.*  However, even statements constituting puffery on their own cannot be dismissed when they contribute to the deceptive context as a whole. *See Williams*, 552 F.3d at 939 n. 3.

---

[1]The Court notes that while Defendant summarily argues that all claims must be dismissed, it does not provide support legal authority to support dismissal of all seven causes of action based on puffery.
[2] Page numbers are based on the CM/ECF pagination.

As it relates to product labeling of food products, district courts have held "health" related statements cannot be dismissed as puffery because consumers rely on health-related claims when making purchasing decisions. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1085 (N.D. Cal. 2017) (statements such as "Start with a healthy spoonful," "Invest in your health invest in yourself," "good for you," and "balanced breakfast" cannot be dismissed as puffery on a motion to dismiss); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1150-51 (S.D. Cal. 2021) (a brownie mix stating it "creates a moist, delicious, and *healthy* muffin" could not be dismissed as a matter of law as puffery). Further, the district court in *McMorrow v. Mondelez Int'l, Inc.*, Case No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *10 (S.D. Cal. Aug. 17, 2018), a case relied on by Defendant, held the use of "nutritious" on the label addressed the products' overall healthiness and may be misleading or false because the products are not healthy due to the amount of sugar they contain; therefore, at the motion to dismiss stage, the court concluded "nutritious" did not constitute puffery. *Id.* at 10. ("though "nutritiousness can be difficult to measure concretely," the Court finds that, like in *Williams*, these statements do contribute to the context of the alleged deceptive labeling practices as a whole, and are not non-actionable puffery."). But, the district court also found that general advertising statements, such as "Power Up People," "delicious," "part of a balanced breakfast," "specifically baked to release energy regularly and continuously to fuel your body throughout the morning," and "satisfying morning energy" were not measurable, general and vague, and constituted puffery. *Id.* at *11.

Here, the FAC challenges Defendant's use of the phrases "health, balance" and "good for you" within the labels stating "Nova Easy Kombucha is one of those rare things where **health, balance** and goodness get a lot more interesting" and "Some things in life are **good** for you, other things in life are fun. They don't meet each other very often, but when they do, life gets pretty brilliant, pretty quickly." (Dkt. No. 12 FAC ¶¶ 20, 21, 22 (emphasis added).) While "health, balance" and "good for you" do not comment directly on the Products' healthiness, there is an implication or impression that

7

the Products are healthy.[3]  Moreover, Plaintiff has alleged that "healthy" is measurable by claiming that the Products are not healthy because they contain 6-8% alcohol by volume and rely on supporting medical and scientific evidence, (Dkt. No. 12, FAC ¶¶ 25-30). *See Hadley*, 273 F. Supp. 3d at 1085 (claims of "healthy" was not puffery because plaintiff provided a method to measure healthy by alleging the quantity of added sugar in the defendant's products caused them to be unhealthy which was supported by various scientific studies showing the effects of added sugar).

In light of these precedents, and at the motion to dismiss stage, the Court DENIES Defendant's motion to dismiss the California consumer fraud statutes based on the argument that the challenged statements are non-actionable puffery.

### 2. Reasonable Consumer Test

Next, Defendant argues the consumer fraud claims should be dismissed because Plaintiff has not plausibly alleged that the challenged statements on the Products are likely to deceive reasonable consumers because the Surgeon General's alcohol warning is written right below the challenged statements.  (Dkt. No. 13-1 at 10-11.)  In response, Plaintiff contends that he has plausibly alleged that a reasonable consumer would be deceived by the health and wellness messages on the Products' labels.  (Dkt. No. 15 at 11-13.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice", Cal. Bus. and Prof. Code § 17200; the FAL prohibits "any unfair, deceptive, untrue, or misleading advertising", *see* Cal. Bus. and Prof. Code §§ 17200, 17500; and the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices", Cal. Civ. Code § 1770.  Claims under the UCL, FAL and CLRA are governed by the

---

[3] The FAC also alleges that the labels also promote that Nova Kombucha is "healthier than competing products." (Dkt. No. 12, FAC ¶ 12.)  However, Plaintiff has not identified what phrases on the Nova Kombucha's labels support his claim that Defendant promotes the Product as healthier than other competing products.  Therefore, the Court does not address this allegation in its analysis.

"reasonable consumer" test. *Williams*, 552 F.3d at 938 (citation omitted); *Hadley,* 273 F. Supp. 3d at 1063 (courts often analyze claims under the CLRA, FAL and UCL together).

Under the reasonable consumer standard, plaintiffs "must show that members of the public are likely to be deceived" by the alleged representations. *Williams*, 552 F.3d at 938 (citation and internal quotation marks omitted). Likely to deceive requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled", and not a "mere possibility" that the label or advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)). The California Supreme Court has recognized "that these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002) (addressing UCL and FAL claims) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626, (1985)). Whether a reasonable person will likely be deceived is generally a question of fact; therefore, only in a "rare situation" will a motion to dismiss be granted for failure to satisfy this standard. *Williams,* 552 F.3d at 939.

Here, the Products' labels contain one of the following labels:

1. Nova Easy Kombucha is one of those rare things where **health, balance** and goodness get a lot more interesting. Gluten-free, totally natural, probiotic, vegan-friendly, and naturally fermented to 6% ALC. GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems.
2. Some things in life are **good for you**, other things in life are fun. They don't meet each other very often, but when they do, life gets pretty brilliant, pretty quickly. Nova Easy Kombucha is one of those rare things where **health, balance** and goodness get a lot more interesting. GOVERNMENT WARNING: (1) According to the Surgeon General,

>women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems.

(Dkt. No. 12 FAC ¶¶ 20-22 (emphasis added).)

District courts have held that labels on food or drink products that suggest they are "healthy", "balanced" or "good for you" raise an issue of fact whether reasonable consumers would be misled by such statements. *See Jones v. Nutiva, Inc.*, No. 16-cv-00711 HSG, 2017 WL 3617104 at *3 (N.D. Cal. 2017) ("Defendant's product labels—such as characterizing coconut oil as 'nourishing' and a 'superfood'—contribute to the impression that the product is healthy. Accordingly, it would be premature to dismiss these claims and the Court DENIES Defendant's motion to dismiss on this basis."). For example, in a case similar to the instant one, *Marek v. Molson Coors Beverage Co.,* 580 F. Supp. 3d 848, 861 (N.D. Cal. 2022), the defendant argued that no reasonable consumer could be misled into thinking that drinking hard seltzer is "healthy" as a matter of law because the harm of consuming alcohol is generally known and the packaging included the required Surgeon General's warning about the dangers of consuming alcohol. *Id.* The defendant also asserted that by merely disclosing that the product contains "antioxidant Vitamin C", it was not conveying specific health messages to reasonable consumers. *Id.* The district court disagreed and denied dismissal of the California consumer protection statutes holding that there were factual disputes as to how reasonable consumers would interpret the phrase "with Antioxidant Vitamin C from acerola superfruit" in a hard seltzer drink and concluding that this was not a rare situation "where the challenged statements can be determined not to have misled reasonable consumers as a matter of law." *Id.*

Further, as to Defendant's argument that the Surgeon General's warning should dispel any concern that a reasonable consumer will likely be deceived that the Products are "healthy," "reasonable consumers should [not] be expected to look beyond

misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939-40 (rejecting argument that because ingredients were specifically identified there would be no deception and a defendant's disclaimers do not per se defeat a claim that the public may be deceived); *Ebner*, 838 F.3d at 966 ("*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception."); *see Marek,* 580 F. Supp. 3d at 861 (denying motion to dismiss even though packaging include the Surgeon General's warning)*; see Starratt v. Fermented Sciences, Inc., Case No.* 22-cv-03895-HSG, 2023 WL 359500, at *5 (N.D. Cal. Jan. 23, 2023) (denying motion to dismiss where the plaintiffs alleged an inference that a reasonable consumer would be misled by the labels on hard seltzer, "ANTIOXIDANT VIT C + LIVE PROBIOTICS" and "BREWED WITH SUPERFRUITS",  because they distract from the severe harm that occurs from alcohol consumption and alcohol consumption interferes with nutrient absorption killing probiotics so consumers do not receive any benefits from either).  Thus, at this stage, there is a factual dispute, not amenable on a motion to dismiss, whether the statements "good for you" and "health, balance" alongside the Surgeon General's warning could mislead reasonable consumers into believing the Products are healthy.[4]

Here, even though the Surgeon General's warning is right below the challenged statements, the Court concludes that this is not one of the "rare situations" where granting a motion to dismiss is appropriate because it cannot conclude, as a matter of law, that no reasonable consumer would be misled by the labels at issue. *See Williams*, 552 F.3d at 939.

///

---

[4] Defendant's reliance on Ninth Circuit cases underscoring that product packaging should be examined in its full context did not concern labels concerning health claims and are not supportive in this case. (Dkt. No. 13-1 at 11 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) and *Moore v. Trader Joe's C*o. 4 F.4th 874, 882 (9th Cir. 2021).)

### D. Standing for Injunctive Relief

Lastly, Defendant asserts that Plaintiff lacks standing to pursue injunctive relief because he cannot establish a likelihood of future harm because he now knows the Products contain alcohol and the potential harm in consuming alcohol. (Dkt. No. 13-1 at 11-12.) Moreover, it contends that even if Defendant were to eliminate its alcoholic line of kombucha and only sell traditional kombucha, Plaintiff cannot plausibly allege future harm. (*Id.*) Plaintiff responds that he has sufficiently alleged future harm based on his desire to purchase the Products in the future and cannot rely on the Products' labels. (Dkt. No. 15 at 14-16.) He also claims that he would purchase the Products in the future but will be unable to know the relative healthfulness of the Products with other similar hard kombuchas and cannot rely on the Products' labels. (*Id.* at 16-17.)

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946. "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he will face a 'real or immediate threat . . . that he will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (internal quotation marks omitted). In the context of false advertising cases, the Ninth Circuit has held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that [he] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [he] would like to"; or (2) "the consumer's plausible allegations that [he] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [he] may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70. In

*Davidson*, the Ninth Circuit specifically noted that the plaintiff adequately pleaded she would face a similar harm in the future because of her "inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly flushable wipes" because she had "no way of determining whether the representation 'flushable' is in fact true." *Davidson*, 889 F.3d at 971-72.

In another case, the Ninth Circuit addressed standing for injunctive relief on an appeal of an order granting class certification. *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) (unpublished). In that case, the plaintiffs alleged that the advertising slogan, "no artificial flavors. no preservatives added since 1886" was misleading because the product included phosphoric acid, which is a chemical preservative or artificial flavor. *Id.* at *1. The Ninth Circuit determined that the plaintiffs had not demonstrated a threat of future harm sufficient to support their claim for injunctive relief noting that "[n]one of the plaintiffs in this case [as opposed to the plaintiff in *Davidson*] allege a desire to purchase Coke *as advertised*, that is, free from what they believe to be artificial flavors or preservatives, nor do they allege in any other fashion a concrete, imminent injury." *Id.* at *2 (emphasis in original). Instead, all plaintiffs "stated that if Coke were properly labeled, they would consider purchasing it." *Id.* The court stated that "such an abstract interest in compliance with labeling requirements is insufficient, standing alone, to establish Article III standing" and that "the imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke." *Id.* (emphasis in original).

Specifically, the court determined two plaintiffs did not have standing to seek injunctive relief because they did not state they would purchase Coke in the future. *Id.* It also concluded that four other plaintiffs did not have standing to seek injunctive relief because their "declarations that they would 'consider' purchasing properly labeled Coke are insufficient to show an actual or imminent threat of future harm." *Id.* Finally, it addressed two plaintiffs who "explained that they were not concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its product's labels." *Id.*

Both plaintiffs stated that "they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors." *Id.*  The court explained that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.*  It continued that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)). The Ninth Circuit concluded that these plaintiffs did not have standing to seek injunctive relief because their "desire for Coca-Cola to truthfully label its products, without more, is insufficient to demonstrate that they have suffered any particularized adverse effects." *Id.*

District courts have differed in addressing standing for injunctive relief at the motion to dismiss stage.  Some district courts have held that a plaintiff may survive a motion to dismiss as long as he or she alleges either of *Davidson*'s two examples of threatened future injury: (1) "the consumer's plausible allegations that [he] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [he] would like to"; or (2) "the consumer's plausible allegations that [he] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [he] may reasonably, but incorrectly, assume the product was improved", *Davidson*, 889 F.3d at 969-70.  *See Brown v. Food for Life Baking Co., Inc.*, --F. Supp. 3d --, 2023 WL 2637407, at *6 (N.D. Cal. Feb. 28, 2023) (unlike the plaintiffs in *In re Coca Cola*, "Plaintiffs alleged that they would purchase the products again if it were reformulated to provide the claimed amount of digestible protein or if the labels were changed."); *Marek*, 580 F. Supp. 3d at 863 (plaintiffs sufficiently alleged standing for injunctive relief by asserting that they might purchase the "defendants' products in the future (if they are either reformulated to remove the nutrients and labeled without the unlawful and misleading nutrient claims) or might purchase but pay less for the products"); *Nacarino v. Chobani, LLC*, --F. Supp. 3d --, 2022 WL 344966, at *11 (N.D. Cal. Feb. 4, 2022) (distinguishing *In re Coca Cola* and concluding that the plaintiff's allegation that she "would purchase the Product again in the future if the Product were

reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant or if the labelling complied with federal and state regulations' satisfied *Davidson*'s first prong."); *Starratt*, 2023 WL 359500, at *2 (denying motion to dismiss for lack of Article III standing for injunctive relief where the plaintiffs alleged "desire to purchase alcohol products again, including those marketed and sold by Defendants"; and "would likely purchase [Defendant's] Products again in the future" if those Products "were reformulated to remove the nutrients, and labeled without the unlawful nutrient claims"; and that they "regularly visit[ ] stores where the Products and other hard seltzers are sold"); *Paschoal v. Campbell Soup Co.*, Case No. 21-cv-07029-HSG, 2022 WL 4280645, at *5 (N.D. Cal. Sept. 15, 2022) (*Davidson* only requires the plaintiffs allege they "continue[ ] to desire to purchase baby and toddler food products" and that "[i]f the Products did not contain unlawful and misleading labels, [they] would likely purchase the Products again in the future.").

Other district courts have distinguished between representations on a label that can be verified by reading the product label with representations that cannot be verified, as the product in *Davidson*, to determine whether the plaintiff will be subject to repeated injury. *See Stewart,* 537 F. Supp. 3d at 1127-28 (granting dismissal of injunctive relief for lack of standing because even though the plaintiffs complained about marketing language on the product's packaging, of "no preservatives", "free of artificial additives," "healthy," and "protein-packed", the plaintiff can check the nutrition facts or ingredient labeling to assess if the products still contain preservatives, artificial additives, unhealthy levels of fat, cholesterol, sugar, and vitamins, or insufficient protein but denying dismissal of injunctive relief for "non-GMO" label because the plaintiff is unable to make that determination based on the serving size, net weight, nutrition facts or ingredient list); *Jackson v. General Mills, Inc.*, Case No.: 18cv2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (plaintiff allegedly deceived by cereal box slack-fill lacked standing to seek injunctive relief "given that she now kn[ew] she [could] ascertain the amount of cereal she is buying by looking at the label"); *Fernandez v. Atkins*

*Nutritionals, Inc.*, Case No. 17-CV-1628 GPC-WVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (plaintiff allegedly deceived by "net carbs" representation on product packaging lacked standing to seek injunctive relief; noting plaintiff "now kn[ew] how [defendant] goes about calculating its net carbs claims, and she [would] not be misled next time").

Furthermore, other district courts have found fatal the allegation that a plaintiff would purchase the defendant's product in the future if the product was reformulated because a court cannot impose a mandatory injunction requiring a company to alter its products. *See Brown v. Van's Int'l Foods*, Case No. 22-cv-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) ("I will not issue a mandatory injunction requiring [the defendant] to add more protein to its products."); *Prescott v. Nestle USA, Inc.,* No. 19cv7471-BLJ, 2020 WL 3035798 (N.D. Cal. June 4, 2020) ("the Court lacks authority to compel [the defendant] to make any particular product by way of an injunction."); *Grausz v. The Kroger Co.*, Case No.: 19cv449-TWR(AGS), 2021 WL 5534706, at *7 (S.D. Cal. Jan. 22, 2021) ("the Court is unable to compel Defendant to make the reformulated product Plaintiff does desire to purchase in the future.").

Here, the FAC alleges that Plaintiff was seeking a kombucha beverage that was "healthy." (Dkt. No. 12, FAC ¶ 46.)  After relying on Defendant's health and wellness representations, he believed "the Products were healthy despite the alcoholic content." (*Id.* ¶ 47.)  Plaintiff "still sees the Products at stores when he shops, and would purchase Nova Kombucha if it were reformulated so that the voluntary health and wellness labeling statements on the label were true." (*Id.* ¶ 58.)  Further, if Plaintiff "could be assured the challenged claims were true through an injunction . . ., he would purchase the Products in the future, but absent such an injunction, he may not be able to tell whether the Products were reformulated in such a way that makes the representations true." (*Id.* ¶ 59.)

Recognizing the court cannot impose a mandatory injunction requiring Defendant to reformulate its products, Plaintiff seeks to amend the FAC to allege that

"reformulated" means "relabeled" if the court were to grant dismissal of injunctive relief. (Dkt. No. 15 at 14 n.2.)  The Court also notes that the FAC does not pursue a mandatory injunction requiring Defendant to reformulate the Products but instead seeks to have the Products labeled correctly without any misleading or deceptive advertising.  (Dkt. No. 12, FAC at p. 28.)  Therefore, the Court construes "reformulated" to mean "relabeled" in the FAC.  *See Brown*, 2022 WL 1471454, at *11 ("'reformulated' may mean that the Products are relabeled").

   Despite construing "reformulated" to mean "relabeled", the Court finds the facts, as alleged, are distinguishable from *Davidson* and concludes that Plaintiff has not plausibly alleged a real or immediate threat of repeated injury in the future concerning the representation that the Products are "healthy."  Plaintiff alleges he was seeking a "healthy" kombucha drink and purchased the Products relying on their labels' health and wellness representations.  (Dkt. No. 12, FAC ¶¶ 46, 47.)  Plaintiff alleges the Products contain about 4-8% alcohol by volume and even traditional kombucha, by its fermentation process, also contains trace amounts of alcohol (.5% or less).  (*Id.* ¶ 12.)  He also claims "there is no safe level of alcohol consumption, and any increase in consumption increases risk of disease."  (*Id.* ¶ 37.)  Therefore, Plaintiff cannot plausibly allege he will purchase the Products in the future if labeled correctly.  In other words, even if the health and wellness representations were removed, he will not likely purchase the Products since he was looking for a "healthy" kombucha drink.  Furthermore, Plaintiff has not plausibly alleged a desire or intent to purchase the Products with their levels of alcohol.  *See Joslin v. Clif Bar & Co.*, Case No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) ("If Plaintiffs do not want products that do not contain real white chocolate, the Court is hard pressed to see how Plaintiffs would be able to allege the requisite future harm.").

   Moreover, at the hearing, Plaintiff argued that he has standing, as a consumer, to enjoin Defendant from using misleading labels on its Products.  However, the Ninth Circuit has noted that a plaintiff "cannot satisfy the demands of Article III by alleging a

bare procedural violation . . . [a]nd an asserted informational injury that causes no adverse effects cannot satisfy Article III." *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (internal citations and quotation marks omitted) ("Woods' and Marino's desire for Coca-Cola to truthfully label its products, without more, is insufficient to demonstrate that they have suffered any particularized adverse effects.").

Thus, based on Plaintiff's allegations, the Court GRANTS Defendant's motion to dismiss the injunctive relief claim based on the representations that the Products are "healthy" for lack of standing.

At the hearing, Plaintiff requested leave to amend to clarify the allegations in the FAC. Because leave to amend would not be futile, the Court GRANTS Plaintiff leave to file a second amended complaint. *See DeSoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

### Conclusion

Based on the reasoning above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss as discussed above. Plaintiff shall file a second amended complaint within 21 days of the filed date of this order.

IT IS SO ORDERED.

Dated:  January 29, 2024

Hon. Gonzalo P. Curiel
United States District Judge